Harold E. Koreman, J.
The petitioner herein seeks an order, pursuant to article 78 CPLR, annulling and vacating the determination or decision of the respondents Office of General Serv *597 ices (hereinafter referred to as OGS) and the Comptroller of the State of New York, awarding a certain contract to the respondent Sealtest Milk Co. and directing the acceptance of petitioner’s hid on said contract.
The undisputed facts disclose that respondent OGS forwarded specifications to various milk dealers including petitioner and respondent Sealtest, setting forth information and detailed specifications relating to bids for fluid milk and cream contracts for certain specified Mental Hygiene Department agencies. The specifications provided in part that the ‘1 award will be made on the total low bid for fluid milk and cream * * * for each agency unless otherwise specified in the proposal ’ ’. The proposal submitted to the milk dealers contained certain instructions and amendments to the original specifications and also contained the forms on which bids for the milk and cream contracts for the specified agencies were to be made. It was provided on page 8 of the proposal, footnote (a) that ££ a combined award will be made for Willard and Sampson ”, referring to Willard State Hospital, Willard, New York, and Willard State Hospital, Sampson Unit, Willard, New York. This was the only provision for making of a combined award. It is not disputed that the petitioner submitted bids for the two Willard institutions in the sum of $58,053.13 and $36,623.10, making a total bid of $94,676.23 for both institutions, and that the respondent Sealtest submitted bids for the same two institutions of $59,107.57 and $37,327.14, or a total bid of $96,434.71. Sealtest also submitted a bid of $86,701.12 to supply milk and cream to a third institution, namely Binghamton State Hospital. Petitioner submitted no other bids except for the two Willard institutions, and since its bid was lower than that of respondent Sealtest as to those institutions, petitioner maintains that it is entitled to the combined award for the Willard institutions as provided for in the proposal. It appears that the next lowest bidder with respect to Binghamton State Hospital was one Magic City Ice and Milk Co. whose bid was in the amount of $91,854.40. Magic City did not submit any bid for the Willard institutions’ contract.
The respondent OGS awarded a contract to the respondent Sealtest for the milk requirements of Binghamton State Hospital and the two Willard institutions, with the approval of the respondent Comptroller. Admittedly, this was done by adding the amount of Sealtest’s bid for Binghamton State Hospital to the total amount of its bids for the two Willard institutions. Respondents OGS and the Comptroller maintain that they acted properly within their authority in awarding the contract for the Willard institutions to respondent Sealtest, even though *598 petitioner was low bidder on that contract. Respondents take the position that by not awarding the Willard institutions’ contract to petitioner and a separate contract to Sealtest for Binghamton State Hospital, an ultimate cash saving to the State of $3,079.20 was effected. Thus, respondents OGS and the Comptroller allege they acted in the best interests of the State.
It is contended further that the authority for awarding the contract as made is contained in the following provision of the General Specifications: ‘ ‘ Section 5. The entire bid is understood to be in accordance with the specifications and this proposal unless the bidder explains in detail in the space below any deviations in his bid. (If necessary, you may attach a letter explaining the deviation in more detail.) ”
In submitting its bid to supply milk and cream to both Willard institutions and to the Binghamton State Hospital, Sealtest attached conditions and reservations as contained in a letter dated May 17,1966, by which the bids were qualified by reserving the right to reject an award of the contracts of any of these three institutions if the award did not include all of the milk requirements of all three institutions. A memorandum from respondent OGS to respondent Comptroller, dated June 27,1966, discloses that OGS had attempted to have Sealtest reconsider accepting an award for Binghamton State Hospital only, but Sealtest would not accept such an award except at an increase in its bid price. The memorandum also states that ‘ ‘ in view of the circumstances we have reviewed the bids submitted for Willard State Hospital, Sampson Unit of Willard State Hospital and Binghamton State Hospital and are awarding to Sealtest Foods on their ‘ all or none ’ basis. ’’ (Italics mine.) Thus, it becomes apparent that in arriving at the lowest bidder, respondents OGS and the Comptroller followed a procedure which was not provided for in the specifications, and which was designed to suit the demands of the respondent Sealtest. The plain language of section 5 of the General Specifications obviously has reference to deviations in the specifications and proposal, and not to the method to be employed in awarding the contract. The lowest, responsible bidder must be determined in accordance with the provisions of the specifications and proposal, namely the lowest responsible bidder for each agency or unit, and insofar as the subject contract is concerned, respondents OGS and the Comptroller were required to award it to the lowest responsible bidder for the combined agencies of the Willard Hospital and Sampson ' Unit.
While the court recognizes that the agency or person charged with the responsibility of decision should have its decisions *599 upheld, and that in order to form a basis for judicial intervention, it must be demonstrated that the method used in awarding of the contract was clearly arbitrary and without authority or foundation (Matter of Kay field Constr. Corp. v. Morris, 15 A D 2d 373; Matter of Kaelber v. Sahm, 281 App. Div. 980, affd. 305 N. Y. 858; Matter of Graziani v. Rohan, 10 A D 2d 154, affd. 8 N Y 2d 967), the courts may intervene in a case where the undisputed facts show that the method used in awarding the contract was neither provided for nor contemplated in the specifications and proposals and resulted in prejudice to a competing bidder (Standard Oil Co. of N. Y. v. Morris, 151 Misc. 345). Public policy dictates that all responsible bidders be afforded equal opportunity to compete. By awarding the contract to Sealtest simply because it would not accept the award for the two Willard institutions unless it also received the award for Binghamton State Hospital, respondents OGS and the Comptroller in effect eliminated petitioner’s bid from any consideration despite the fact that it was the lowest responsible bidder in accordance with the specifications and proposal.
Respondents OGS and the Comptroller also argue that in awarding the contract to Sealtest they acted in the best interests of the State since it resulted in a net cash saving of $3,079.20 to the State. This argument is based on a provision of the General Specifications which reads as follows: “The Commissioner reserves the right to evaluate and/or reject all bids in whole or in part, and to waive technical defects, irregularities, and omissions, if, in his judgment, the best interests of the State will be served.” This provision is derived from section 174 of the State Finance Law, which states in part, “ Contracts with the commissioner of general services or with a state department or institution, or other agency of a department, shall be let to the lowest responsible bidder, as will best promote the public interest, taking into consideration the reliability of the bidder, the qualities of the articles proposed to be supplied, their conformity with the specifications, the purposes for which required and the terms of delivery ’ ’.
In enacting chapter 799 of the Laws of 1941, the Legislature amended section 174 of the State Finance Law, and added the words “ as will best promote the public interest ”, and the words “ the reliability of the bidder ” as factors to be taken into consideration in awarding a contract to the lowest responsible bidder. The history of the legislation reflects that the purpose and intent of this amendment was to vest discretion in a State department or agency to make an award to a bidder other than the lowest one if in the judgment of the letting officer such an *600 award would best promote the public interest. The amendment permits an exception to the general rule which requires that a contract be awarded to the lowest responsible bidder in order to safeguard the public interest. For example, in a situation where the lowest bidder may he responsible hut has a record of disturbing labor relations or other experiences which indicate the work will not progress expeditiously, section 174 of State Finance Law permits, subject to the written consent of the Comptroller, a letting to one not the lowest bidder. (See Legislative Bill Jacket, L. 1941, ch. 799). Clearly, the statute does not authorize the letting authority to make the award in a manner which was not provided for in the proposal and general specifications. Respondents OGrS and the Comptroller have rejected the lowest bids for the two Willard institutions. There is no contention here that petitioner is not a responsible bidder or has failed to meet the criteria set forth in section 174 of the State Finance Law. In my opinion, the requirement that a contract be let to the lowest responsible bidder as will best promote the public interest, does not authorize the grouping of unrelated bids in a manner not contemplated when the bids were solicited, even though such a procedure results in a cash saving to the State. The respondents do not assert any other basis for their unauthorized action except the cash saving. They may not justify it by the conclusory allegation that the award was made to the lowest responsibile bidder as will best promote the public interest.
Accordingly, the relief sought in the petition is in all respects granted.