In the Matter of MARGROVE, INC., Respondent, *v.* OFFICE OF GENERAL SERVICES OF THE STATE OF NEW YORK et al., Appellants.

Third Department, April 5, 1967.

*Louis J. Lefkowitz, Attorney-General (Henderson G. Riggs* and *Ruth Kessler Toch* of counsel), for Office of General Services and another, appellants.

*Bouck & Holloway (Warner M. Bouck and Roger M. Fritts* of counsel), for Sealtest Foods Division, National Dairy Products Corporation, appellant.

*Wiser, Shaw, Freeman, Van Graafeiland, Harter & Secrest (Bruce E. Hansen* of counsel), for respondent.

GIBSON, P. J. Appeals are taken by the Office of General Services of the State of New York (OGS), the Comptroller of the State of New York (Comptroller) and Sealtest Foods Division of National Dairy Products Corporation (Sealtest) from an order and judgment of the Supreme Court at Special Term in Albany County, which, in a proceeding under article 78 of the CPLR, (1) annulled determinations of appellants OGS and Comptroller awarding to appellant Sealtest a certain contract for the fluid milk and cream requirements of the combined agencies of the Willard State Hospital and the Willard State Hospital, Sampson Unit, for the period July 1, 1966 to June 30, 1967; (2) rescinded, set aside and annulled said contract; and (3) directed appellants OGS and Comptroller to enter into a contract with petitioner-respondent Margrove, Inc. for said requirements of said combined agencies (prorated for the time remaining of the original contract period) in accordance with the terms of petitioner-respondent's bid and proposal for said contract, the Specification dated April 15, 1966 and the General Specifications dated October 1, 1962.

The issues are clearly outlined and correctly decided in the comprehensive and well-considered opinion of Mr. Justice KOREMAN at Special Term (51 Misc 2d 596) and we write only to discuss the arguments advanced in the minority opinion and, as a necessary preliminary thereto, to state a brief synthesis of the parties' procedures culminating in the contract award which has properly been set aside.

Appellant OGS solicited bids for supplying the milk and cream requirements of some 39 separate Mental Hygiene agencies throughout the State. Among these many agencies were two units (Willard and Sampson) of Willard State Hospital, and with respect to these two the OGS proposal stated: "Combined award will be made for Willard and Sampson". Appellant Sealtest submitted bids for the requirements of Willard and Sampson and, additionally, for those of Binghamton State Hospital. Respondent Margrove bid only for Willard and Sampson. Magic City Ice and Milk Company, not a party to this proceeding, became the low bidder for Binghamton upon Sealtest's refusal to accept the Binghamton award without the other two. The pertinent bids were as follows:

|  | Margrove | Sealtest | Magic City |
|---|---|---|---|
| Binghamton | No bid | $ 86,701.12 | $91,854.40 |
| Willard | $58,053.13 | 59,466.37 | No bid |
| Willard-Sampson | 36,623.10 | 37,283.94 | No bid |
| Total | $94,676.23 | $183,451.43 | $91,854.40 |

Clearly, the combined bid by Margrove of $94,676.23 was lower than the aggregate of Sealtest's bids of $96,750.31 for Willard and Sampson and under the OGS proposal the " [c]ombined award   *   *   *   for Willard and Sampson " should have been to Margrove; and the correct decision of the case seems to us as simple and self-evident as that. Nevertheless, because of the circumstance that the total of Sealtest's bids for Willard and Sampson plus its bid for the completely separate and unrelated agency at Binghamton was lower than the aggregate of Margrove's bids for the Willard-Sampson units plus that of Magic City for the Binghamton facility, OGS and the Comptroller awarded for this new, previously unannounced and, in our view, completely unwarranted combination by contracting with Sealtest.  As Special Term correctly held, " The lowest responsible bidder must be determined in accordance with the provisions of the specifications and proposal, namely the lowest responsible bidder for each agency or unit, and insofar as the subject contract is concerned, respondents OGS and the Comptroller were required to award it to the lowest responsible bidder for the combined agencies of the Willard Hospital and Sampson Unit." (51 Misc 2d 596, 598.)

We find no basis for the conclusion expressed in the dissenting opinion in this court that Condition 33 of the General Specifications and section 174 of the State Finance Law authorized this contract award as in " the best interests of the State " or so as to " best promote the public interest ". Indulging the doubtful assumption that the practice followed in this case, resulting in an apparent saving of $3,000, would promote the public interest and would not, on the contrary, discourage future alleged competitive bidding or engender other evils, nevertheless the proviso of section 174 upon which the minority relies is that contracts shall be let, not as will best promote the public interest *in any event*, but that contracts *" shall be let to the lowest responsible bidder*, as will best promote the public interest ".  (Italics added.)  As Special Term succinctly put it, " Public policy dictates that all responsible bidders be afforded equal opportunity to compete " (51 Misc 2d 596, 599). It is a fundament of fair play that there be no change in the rules during the competition but here, even worse than a violation

of that concept, the rules were changed after the scores were posted. We are unable to agree with the minority view that a saving of approximately $3,000, accomplished by rejecting the low bids made in good faith and in every respect in compliance with the State's own specifications, is in the State's best interest or, indeed, is anything but degrading to it. Neither do we find any basis, in law or in reason, for the suggestion that Margrove's rights were in some unexplained fashion limited by Sealtest's unilateral action in reserving a right to refuse an award that did not include the milk requirements of all *three* institutions named in its bids. Certainly, this was a proper escape clause, for Sealtest's benefit; but, with equal certainty, it was nothing more. We find likewise irrelevant the dissenters' reference to the right reserved to OGS to "reject all bids, in whole or in part"; the simple fact being that there was no such general rejection and appellants do not claim that there was.

The judgment and order should be affirmed.

AULISI, J. (dissenting). In this article 78 proceeding, Margrove obtained an order directing acceptance of its bid to sell fluid milk and cream to the Willard (Willard State Hospital, Willard, N. Y.) and Sampson (Willard State Hospital, Sampson Unit, Willard, N. Y.) Mental Hygiene facilities. The Office of General Services, Comptroller and Sealtest appeal.

Sealtest's bid was originally accepted, although it required the State to award Sealtest the contracts not only for Willard and Sampson, but also for a Binghamton facility on which Margrove did not bid. Sealtest's total bid price was lower than the sum of the prices bid by Margrove (for Willard and Sampson) and by Magic City, the low bidder for the single Binghamton contract. Margrove's bid was lower than the portions of the Sealtest bid allocated to Willard and Sampson. The specifications Office of General Services had sent to all these bidders provided that the "award will be made on the total low bid for Fluid Milk and Cream * * * for each Agency unless otherwise specified in Proposal." The only reference therein to combined bids stated that a combined award would be made for Willard and Sampson. However, the specifications were accompanied by General Specifications declaring: "All proposals issued by the Commissioner will bind bidders and contractors to the conditions and requirements set forth in these general specifications, and such specifications shall form an integral part of each purchase contract awarded by the Commissioner." Item 33 of the General Specifications pro-

vides: "The Commissioner reserves the right to evaluate and/or reject all bids in whole or in part, and to waive technical defects, irregularities, and omissions, if, in his judgment, the best interests of the State will be served."

Section 174 of the State Finance Law, the applicable statute, provides: "Contracts with the commissioner of general services or with a state department or institution, or other agency of a department, shall be let to the lowest responsible bidder, as will best promote the public interest, taking into consideration the reliability of the bidder, the qualities of the articles proposed to be supplied, their conformity with the specifications, the purposes for which required and the terms of delivery; provided, however, that no such contract shall be let to a bidder other than the lowest responsible bidder without the written approval of the comptroller."

Margrove's bid complied with the particular specifications. Sealtest's bid did not comply expressly, but the specifications provided that a nonconforming bid should so note, and Sealtest complied with this requirement. In our view there was no change in the rules at any time. The Comptroller gave his approval to accepting Sealtest's bid. The issue then is whether or not the Office of General Services has authority under the General Specifications and the statute to award the contract to Sealtest. We are of the opinion that section 174 of the State Finance Law, and Item 33 of the General Specifications should be read broadly as giving the Office of General Services such power. This interpretation is supported by the legislative history of chapter 799 of the Laws of 1941, which added the "public interest" test to section 174. The bill jackets show the amendment was suggested by the State Federation of Labor, which was concerned about the labor practices of certain bidders on public contracts. Memoranda to the Governor and his advisors, however, imply a belief that there were no special restrictions on the factors which could be weighed in the public interest. These memoranda, including one from the Deputy Comptroller, state that the amendment gave the contracting authority wide discretion in choosing bidders and that the various criteria were not enumerated which might be determinative in deciding which bidder could best promote the public interest.

Wide discretion is generally accorded public officers in letting of public contracts. "The awarding of a contract on the part of a public official to one of several bidders requires the exercise on his part of judgment and discretion * * * and, where

there is found to be a rational basis for the administrative determination, the judicial function is exhausted and the administrative agency, not the court, is the final arbiter * * * Thus, the courts may not interfere, in an article 78 proceeding brought by a bidder, with the lawful exercise of discretion vested in the awarding body * * * and rarely will the court by way of an order in the nature of mandamus direct an administrative agency or official to award a contract to a particular bidder ''. (*Matter of Zara Contr. Co. v. Cohen,* 45 Misc 2d 497, 499 and cases cited, affd. 23 A D 2d 718, mot. for lv. to app. den. 16 N Y 2d 482.) On the record before us we cannot say the Office of General Services and the Comptroller abused their discretion under section 174. A strict construction of the statute, to sharply limit this discretion, would contravene the fundamental public policy of enabling the State to purchase on the best possible conditions. The rising cost of and demand for State services, including mental hygiene facilities, produce pressures requiring discretion by contracting officials which should only be limited by express, narrow statutory language or fundamental unfairness in the bidding process. The broad language of the statute and General Specifications and the express provisions in the special specifications for nonconforming bids do not mandate such restriction here.

Furthermore, there was no unfairness in the bidding process. It cannot be held that the special specifications estop the State, since the General Specifications were distributed with, and specifically state they form an integral part of each purchase contract. The special specifications must also be read in light of the statute governing the purchasing, section 174. The statute controls and the bidder must know this when he submits his bid. Although the present situation may not have been specifically contemplated by the draftsmen and there are no cases in point, it is clear that the statute and General Specifications are intended to leave the Office of General Services free to accept bids which are most in the public interest, even if they are not the lowest bids. The conclusion reached therefore follows since the Sealtest bid is actually the lowest total bid. Bidders must be held to know that the wide discretion possessed by public officials in letting contracts may be exercised in their case. In addition, petitioner does not claim that it could have submitted a bid which would have altered the State's determination even if the Office of General Services had notified it of the State's intention. A bid on the Binghamton contract was impossible. Its bid for the Willard agencies was already lower than that of Sealtest and it cannot be assumed, absent such a

showing, that petitioner would have lowered its bid to overcome the advantages of giving the entire contract to Sealtest.

The judgment and order should be reversed.

HERLIHY and GABRIELLI, JJ., concur with GIBSON, P. J.; AULISI, J., dissents and votes to reverse and dismiss in opinion in which STALEY, JR., J., concurs.

Judgment and order affirmed, with costs to respondent.