AMERICAN TOTALISATOR COMPANY, INC., Appellant, v NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE et al., Respondents.

Third Department, May 21, 1981

APPEARANCES OF COUNSEL

*Poletti, Freidin, Prashker, Feldman & Gartner (Herbert Prashker* of counsel), for appellant.

*Robert Abrams, Attorney-General (Richard J. Dorsey, William J. Kogan* and *Shirley Adelson Siegel* of counsel), for New York State Department of Taxation and Finance and others, respondents.

*Rogers, Hoge & Hills (W. Hubert Plummer* of counsel), for Control Data Corporation, respondent.

#### OPINION OF THE COURT

YESAWICH, JR., J.

Institution of the New York State Daily Numbers Game prompted the Division of the Lottery (hereafter Lottery) of the New York State Department of Taxation and Finance to issue a written request for proposals (the RFP) to selected contractors for the awarding of a contract to supply and operate an on-line computerized system which would provide the functional backbone of this new lottery format. The two contractors responding who were able to meet the September 1, 1980 date requested by the Lottery for start-up of the system were Control Data Corporation (CDC), to whom the contract was ultimately awarded, and petitioner American Totalisator Company, Inc. (Amtote).

The formula for choosing between the competing bids consisted of a 100-point grading scale; 50 points were awarded on the basis of technical considerations and the remaining 50 points on the basis of relative cost of the system to the State. Part 3 of the RFP, entitled "Technical Specifications", declares at paragraph 3.11 that in the event of ties information furnished by the bidders regarding their backup site capabilities would be considered. What ties are to be broken by resort to the 3 points alloted in the RFP to backup sites are not defined.

Award of any contract was to be made in accordance with the terms and conditions set forth in the RFP. Included in its general specifications was a requirement that the contractor "have operational 750 on-line terminals within 120 calendar days after award of the contract", and further that it "install and have on line an additional minimum of 50 terminals per month for a period of one year * * * [and after one year] * * * install and have operational a minimum of 50 terminals per month at the re-

quest of the Lottery for the remaining two years of the contract."

Technical data contained in the proposals received was evaluated by a committee comprised of four senior officials in the Division of the Lottery. Cost analysis was undertaken by the Director of Lottery Systems and Games Development based upon an official sales estimate prepared by the Lottery Director. When the technical evaluation, arrived at by the evaluation committee, disclosed a tie between CDC and Amtote with each receiving 41.50 points, the committee then looked to the bidders' backup site proposals and awarded additional points to each bidder accordingly. CDC's backup site capabilities were found to merit an additional 1.25 points, whereas Amtote's only warranted an additional .50 points. Consequently, CDC's total score in the technical area was 42.75 points compared to 42.00 for Amtote.

In reckoning cost points, the Lottery considered the contractors' proposed fees for each month of the contract term on the basis of projected sales per terminal for an assumed number of terminals in operation each month. The Lottery, in its calculations, projected the operation of 750 terminals in the first month of the contract and posited a 50 terminal per month increment in the ensuing months of the contract term. Omitted, however, was the assumption of an additional 50 terminals during the seventh month of the contract, for it had been determined by the Lottery Director that an adjustment, primarily due to anticipated delay in terminal installation, should be factored into the calculation. This action amounted to a "skip" of the addition of 50 terminals during the seventh month of the contract, resulting in the proposed placement of only 2,450 terminals on line during the term of the contract rather than the 2,500 terminals contemplated by the RFP. In analyzing the cost portion of the bids, CDC's proposal was determined to be the least expensive to the State and was assigned 50 points. Amtote's proposal was found to be slightly more expensive and was given 49.92 points. CDC, with a grand total of 92.75 points compared to Amtote's 91.92 points, was awarded the contract.

Amtote maintains that the Lottery arbitrarily and capriciously departed from the terms and conditions of the RFP when it awarded backup site points to break a tie score in the technical portion alone. In its view, these points were to be resorted to only to separate a tie in the grand total of points allotted in both the technical and cost areas. It also sees impropriety in the Lottery's decision to "skip" the addition of 50 terminals during the seventh month of the contract.

■ The charge that awarding backup site points to break the tie in the technical portion of the contract constituted a deviation from the terms of the RFP is not borne out by the record. As already noted, the tie breaking language is actually located in the "Technical Specifications" part of the RFP. Moreover, the evaluation worksheet, furnished to each of the bidders, makes allowance for a subtotal of 47 points for the technical portion of the contract and 50 points for the cost portion, leaving 3 points to be allotted for the backup site. Inasmuch as the contract was divided into two coequal portions, it was not an unreasonable conclusion that the 3 points attributable to the backup site were to be apportioned in the event of a tie in the technical area.

■ Nor do we find the Lottery's decision to "skip" the addition of 50 terminals in the seventh month to be unreasonable. Included in the RFP is a provision investing the Lottery Director with discretion to reject any or all proposals or, if he deems it in the best interest of the State to do so, to award them in whole or in part. Furthermore, prior to the submission of bids, the contractors were apprised of the fact that the Lottery Director had discretion to determine the sales level per terminal to be utilized in evaluating cost factors. The decision to "skip" 50 terminals during the seventh month was predicated on an anticipated delay in terminal installation. This pragmatic variation had a rational basis, for it was rooted in the Lottery's prior experience and the experience of similar on-line systems in other States. Significantly, the "skip" had been decided upon prior to the opening of any of the proposals and was applied nondiscriminately to each contractor. Amtote's assertion that the decision to employ the "50 terminal skip"

came after the competing proposals had been opened and reviewed is contradicted by ample affiant evidence and is merely a speculative hypothesis, not warranting an evidentiary hearing.

It is also worth noting that even if the 50 terminals subject to the "skip" were included in the cost evaluation and Amtote's proposal was awarded 50 cost points, CDC, according to Amtote's own calculations, would still have been awarded 49.99 cost points. If such were the case, Amtote's lead would have vanished when the technical points were added and CDC still would have scored more points.

Where, as here, the administrative action taken in making a contract award is rational, the agency's determination is to be affirmed (see *Matter of Pell v Board of Educ.*, 34 NY2d 222; *Matter of Bortle v Tofany*, 42 AD2d 1007).

The judgment should be affirmed, with costs.

MAHONEY, P. J., KANE, MAIN and MIKOLL, JJ., concur.

Judgment affirmed, with costs.