In the Matter of PROGRESSIVE DIETARY CONSULTANTS OF NEW YORK, INC., Appellant, v WYOMING COUNTY, Respondent.

Fourth Department, December 17, 1982

### APPEARANCES OF COUNSEL

*Shults & Shults (David Shults of counsel)*, for appellant.

*A. Reid King, County Attorney*, for respondent.

### OPINION OF THE COURT

SCHNEPP, J.

In this CPLR article 78 proceeding petitioner seeks to annul Wyoming County's rejection of its public bid for the administration and operation of the dietary department of the Wyoming County Community Hospital and Skilled Nursing Facility and to compel the county to award the contract to it as the lowest responsible bidder. Petitioner claims that it submitted the lowest bid which should have been accepted (see General Municipal Law, § 103) and that the county "acted arbitrarily, capriciously and contrary to law and * * * against [its] best interest" when it failed to accept petitioner's bid and awarded the contract to the

Saga Corporation, the next highest bidder. Placed in issue is the validity of the municipality's action in adjusting and recomputing petitioner's submitted bid by applying a standard not specified in the bid documents. Special Term dismissed the petition without a hearing on the ground that a factual basis existed for the county's award. We disagree.

In August, 1981 the county solicited sealed bids for the contract which involved primarily the preparation and delivery of meals to hospital patients and secondarily the operation of a cafeteria to serve employees and other nonpatients. The contract was to be awarded on a guaranteed cost per patient day basis for the period January 1, 1981 through December 31, 1981 and January 1, 1982 through December 31, 1982, with the county having the option to employ the contractor for four additional years. Although the bid period included 1981, apparently 1982 is the key year for analysis and the 1981 bid figures were intended primarily to provide a basis for fixing the 1982 amounts.

The specifications required each bidder to itemize its costs on several schedules and to transfer each cost component from the separate schedules to a "Schedule F" where the calculations necessary to determine the ultimate net guaranteed cost per patient day were to be made.[1] Calculations involved totaling the gross operating costs for 1981 and then determining the net operating cost by subtracting, *inter alia,* cafeteria revenues. The net guaranteed cost per patient day for 1981 was then derived by dividing the net operating cost by the specified figure of 54,871 patient days.[2] The bidder determined the net guaranteed cost for 1982 by applying its estimated inflation rate to the cost estimates set forth on "Schedule F".

On "Schedule A" of the bid documents, entitled "Food Cost Budget", the bidder was required to itemize its bid for

---

1. According to the county this detailed itemization enabled the hospital's board of managers to scrutinize the components of each bid to insure that the ultimate bid price was realistic and attainable and that the bidded services would meet the standards of quality required by it.

2. Bidders were directed to "base [the] guaranteed patient rate on 54,871 annual adult patient days."

the 1981 annual cost of patient and nonpatient food. The controversy on this appeal centers upon one line of "Schedule A" which required each bidder to estimate the annual cost of nonpatient food by multiplying "annual cafeteria revenue" by a "food cost/price ratio". The parties agree that this ratio represents the percentage of each dollar of cafeteria revenue that the bidder proposed to spend on nonpatient, i.e., cafeteria, food. The specifications permitted bidders to treat annual cafeteria revenue and the food cost-to-price ratio as biddable items to be estimated by them, i.e., bidders were not required to use any specific cafeteria revenue or ratio.

Sealed bids were received by the county from three contractors: petitioner, Saga and Service Systems Corporation, the existing contractor. Petitioner's 1982 bid was $10.065 per patient day based on a net operating cost of $552,250. Saga's bid was $10.37 based on a net operating cost of $568,944. Service Systems' bid was highest. Each bidder completed "Schedule A" differently and estimated, *inter alia,* a different annual cafeteria revenue and a different food cost-to-price ratio. Petitioner anticipated annual cafeteria revenue of $113,847 and used a 63.2% food cost-to-price ratio to estimate a $72,000 nonpatient food cost for 1981. Saga estimated its cost of nonpatient food to be $104,402 while anticipating revenues of $130,503 and using a ratio of 80%. Service Systems' anticipated revenue was $137,280; its ratio was 62.5% and its nonpatient food cost was $85,858. Each bidder was permitted to estimate and actually did estimate a different inflation rate to establish its 1982 costs.

When the county evaluated the bids it determined that, in order to maintain a high quality cafeteria, the food cost-to-price ratio should be 80%, as bid by Saga, and it recomputed the bids of petitioner and Service Systems using this percentage.[3] Saga's bid was left unchanged. Although the adjustment was made in the secondary portion of the bid, the result was to increase not only petitioner's estimated nonpatient food costs but also its total gross and net

---

**3.** The county claims that the 80% food cost-to-price ratio was essential to maintain the food quality in the cafeteria and that this quality could not be achieved at a reduced ratio.

operating cost, and its net guaranteed cost per patient day as set forth in "Schedule F" of its proposal, thereby making its bid higher than Saga's.[4] Service Systems' bid was still highest. The contract was then awarded to Saga and this proceeding ensued.

A municipal service contract is subject to the provisions of article 5-A of the General Municipal Law which are designed "with the dual purposes of fostering honest competition * * * and also to guard against favoritism, improvidence, extravagance, fraud and corruption" (*Le Cesse Bros. Contr. v Town Bd. of Town of Williamson,* 62 AD2d 28, 31, affd 46 NY2d 960; see, also, *Matter of Exley v Village of Endicott,* 51 NY2d 426). In order to promote these purposes the duty is imposed upon a municipality "in advance of bidding, to convey in precise terms to prospective bidders the exact basis on which the contract will be awarded, so that each such bidder will be enabled to make an intelligent evaluation and bid" (*Matter of Suffolk Roadways v Minuse,* 19 AD2d 888, 889). It is required to furnish specifications which state the nature of the work as definitely as practicable and which contain all the information necessary to enable bidders to prepare their bids (see 10 McQuillin, Municipal Corporations [3d ed, rev], §§ 29.52, 29.53, 29.56). It must award the contract on the basis provided for in the specifications and determine the "lowest responsible bidder" in accordance with the specifications (see *Matter of Margrove, Inc. v Office of Gen. Servs. of State of N. Y.,* 27 AD2d 321, affd 19 NY2d 901; *Matter of Suffolk Roadways v Minuse, supra;* see, also, *People ex rel. Ream Pavement Co. v Board of Improvement of Union St.,* 43 NY 227; 10 McQuillin, Municipal Corporations [3d ed, rev], § 29.52, p 349).

By recomputing the bids to reflect the 80% food cost-to-price ratio for nonpatient food, the county changed the rules "after the scores were posted" and used a method to determine the lowest bidder which had not been disclosed in the advertised proposal or bid specifications (see *Matter*

---

4. Petitioner claims that the county arbitrarily increased its ratio to Saga's ratio of 80% without equally adjusting the other components that make up total food cost and the total operating cost. Indeed, it claims that if these components had been compared equally its bid would have been lower than Saga's.

*of Margrove, Inc. v Office of Gen. Servs. of State of N.Y., supra; Matter of Suffolk Roadways v Minuse, supra).* The county did not question petitioner's responsibility or ability to perform the contract or whether petitioner's bid accorded with the advertised proposal and specifications, and it chose not to reject the bid for these reasons. The county adjusted and recomputed petitioner's bid because one bid item did not comply with a requirement theretofore undisclosed. Petitioner was not required to and did not prepare its bid on the basis of an 80% ratio. The amount of the anticipated cafeteria revenue and the food cost-to-price ratio were left to the discretion of each bidder to be submitted as a part of its bid. The lowest bidder was determined after a ratio disclosed in Saga's bid was adopted, for whatever reason, by the county and applied to petitioner's bid.

While recognizing that the county has a legitimate interest in setting high standards for the food served in the hospital, and that an 80% food cost-to-price ratio may be reasonable and in its best interest, its specifications must detail that criterion. If it were the intent of the county that a specific ratio be used, the specifications should have been described the standard with which the bidders were required to comply. After public bids have been advertised, specifications may only be modified by giving bidders notice of any change in the requirements prior to the receipt of bids. Any award which is made must be in accordance with the terms of the advertisement and to the lowest responsible bidder complying with the advertisement and specifications. Once the county belatedly determined that a specific ratio was necessary to maintain the food quality in the cafeteria, it should have rejected all bids, advertised anew and specified in the advertisement the ratio which it deemed best suited to the hospital's requirements. While the county had wide discretion in determining the "lowest responsible bidder", it acted contrary to law when it recomputed the bids using requirements not described in the specifications. The county's manipulation of petitioner's bid was necessarily arbitrary, opened the door to the exercise of favoritism and was manifestly unfair. On the basis of county's undisclosed specification petitioner was not afforded an equal opportu-

nity to compete and to make an intelligent evaluation and bid.

We do not agree, however, that the contract should be awarded to petitioner. Petitioner does not have a "clear legal right" to the award of the contract (see *Matter of Harris v Warde,* 58 AD2d 51, 54; *Matter of Fehlhaber Corp. v O'Hara,* 53 AD2d 746) since the determination of who is the "lowest responsible bidder" necessarily involves the exercise of discretion (see *Matter of Zara Contr. Co. v Cohen,* 45 Misc 2d 497, 499, affd 23 AD2d 718). This court will not usurp the county's discretion under the circumstances in the absence of a showing of dishonesty, fraud, collusion, corruption or bad faith in the awarding of the contract. The county is directed to seek new bids for the contract pursuant to law and consistent with this opinion.

Accordingly, the judgment dismissing the petition should be reversed, the award of the contract to Saga should be annulled and the petition should be granted in accordance with this opinion.

CALLAHAN, J. P., DOERR, DENMAN and BOOMER, JJ., concur.

Judgment unanimously reversed, on the law with costs, and petition granted, in accordance with the opinion by SCHNEPP, J.