In the Matter of NANCO ENVIRONMENTAL SERVICES, INC., Doing Business as NANCO LABORATORIES or NANCO LABS, Respondent, v THOMAS C. JORLING, as Commissioner of the Department of Environmental Conservation, et al., Appellants.

Third Department, November 27, 1991

1

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Patrick Barnett-Mulligan* of counsel), for appellants.

*Paul M. Whitaker* for respondent.

**OPINION OF THE COURT**

LEVINE, J.

Petitioner is an environmental laboratory engaged primarily in the testing and analyzing of soil and water samples taken from suspected hazardous waste disposal sites or other potentially contaminated areas. At all times relevant herein, petitioner was certified by the Department of Health (hereinafter DOH) under Public Health Law § 502 (1) to conduct the testing, evaluation and analysis performed by it. Between

1985 and 1989, petitioner performed testing services for the Department of Environmental Conservation (hereinafter DEC) Division of Hazardous Waste Remediation (hereinafter DHWR), the unit charged with the supervision of hazardous waste site cleanups in the State. During that period, petitioner provided its services under both direct contracts with DEC and as a subcontractor for prime contractors hired by DEC.

Sometime during 1985, DEC established a list of "technically acceptable laboratories" (hereinafter the list) containing the names of testing laboratories that could be used by DEC or its primary contractors. Petitioner appeared on the list in 1985. In March 1988, petitioner was notified by respondent John M. Rankin, DHWR's quality assurance officer, that it was being removed from the list due to alleged deficiencies in its work. Petitioner was restored to the list, however, following a meeting with DEC personnel and a May 1988 field audit.

Thereafter, DEC's dissatisfaction with petitioner's work apparently continued and, in March 1989, respondent Michael J. O'Toole Jr., the director of DHWR, advised petitioner in writing that it was again under consideration for removal from the list based upon four general deficiencies in its work and 10 alleged DEC testing protocol violations. Following unsuccessful attempts to schedule a meeting with DHWR and to secure an extension of time in which to respond, petitioner submitted a written reply to O'Toole's letter. This response was deemed insufficient by O'Toole and, consequently, petitioner was removed from the list. While petitioner was invited to reapply for technically acceptable status, provided that it could demonstrate that the earlier cited problems had been resolved, it was also informed that the earliest possible audit would be in the spring of 1990. Petitioner then sought review by respondent Commissioner of DEC, whose designee ultimately determined that petitioner's removal from the list was appropriate and that petitioner had been afforded adequate due process.

Petitioner then commenced the instant CPLR article 78 proceeding challenging, *inter alia,* respondents' authority to create and maintain the list. Supreme Court granted the petition, concluding, *inter alia,* that (1) respondents lacked statutory authority to generate and maintain the list, (2) respondents were bound by the certification issued to petitioner by DOH, and (3) petitioner was not afforded adequate due process prior to removal from the list. Supreme Court also

enjoined respondents from refusing to pay petitioner for contract and subcontract work performed on DEC projects and from "interfering, directly or indirectly, with petitioner's business, business opportunities, employment, or income". This appeal followed.

■ Initially, it is undisputed that subsequent to the entry of Supreme Court's judgment, DEC abandoned its use of the list, approving laboratories instead on a case-by-case basis in accordance with newly implemented procedures. In view of the foregoing, those portions of the judgment dealing with respondents' authority to develop and maintain the list and any guidelines relative thereto and petitioner's removal from the list have been rendered moot (see, Matter of Allen Group v Adduci, 136 AD2d 803). We find no exception to the mootness doctrine that would warrant our review of those issues (see, Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715).

■ Various other provisions of Supreme Court's judgment must be addressed, however. The first of these is the decretal paragraph directing that respondents are bound by the DOH certification issued to petitioner. Read together with the court's decision and the decretal paragraph enjoining respondents from interfering with petitioner's business opportunities or employment, it appears that Supreme Court concluded that, because petitioner is certified by DOH, DEC is precluded from refusing to approve petitioner as an analytical laboratory qualified to provide services either directly to DEC or to a DEC prime contractor. We disagree. Public Health Law § 502 (1) provides that "[t]he commissioner may issue to laboratories certificates of approval covering * * * laboratory examinations, including but not limited to, specific procedures or specialties within such cat[e]gories as wastewaters, potable waters, sediments, solid wastes, and air". Pursuant to ECL 3-0119, any laboratory tests required to be performed under ECL article 27 must be conducted by a laboratory issued a DOH certificate of approval. Nothing, however, in either Public Health Law § 502 or ECL 3-0119 mandates that DEC agree to contract with a certain laboratory merely because it is certified.

■ Under ECL 3-0301 (2) (b), the Commissioner of DEC is empowered to "[e]nter into contracts with any person to do all things necessary or convenient to carry out the functions, powers and duties of [DEC]". Additionally, State Finance Law

§ 138* prohibits any contractor awarded a State contract from subcontracting without the previous consent of the department or official awarding such contract. Given DEC's clear discretionary authority by statute to enter into contracts and to approve or disapprove of subcontractors, it follows that it is within DEC's discretion to accept or reject potential contractors or subcontractors based upon, *inter alia*, past performance *(see, Matter of Allen Group v Adduci, supra,* at 804; *Matter of Callanan Indus. v White,* 118 AD2d 167, 169-170, *lv denied* 69 NY2d 601). Any determination by DEC regarding whether to contract with a certain laboratory will withstand judicial review so long as it has a rational basis *(see, Matter of Schiavone Constr. Co. v White,* 117 AD2d 440, 444, *lv denied* 68 NY2d 610; *Matter of C. K. Rehner, Inc. [City of New York],* 106 AD2d 268, 270; *American Totalisator Co. v New York State Dept. of Taxation & Fin.,* 80 AD2d 373, 377). Thus, insofar as Supreme Court's judgment compels the performance of a discretionary act (i.e., accepting petitioner as a contractor or subcontractor), it must be reversed *(see, Klostermann v Cuomo,* 61 NY2d 525, 539).

■ The rationality of DEC's apparent requirement that laboratories seeking contracts or subcontracts to perform environmental analysis meet the standards recently implemented (May 1991) by it is not an issue now before us. Nor do we reach the question of whether these current guidelines are required to be filed pursuant to NY Constitution, article IV, § 8 and State Administrative Procedure Act § 202. However, that portion of Supreme Court's judgment directing that "any guidelines or procedures constitute fixed, general standards applicable to all laboratories, requiring filing under the State Administrative Procedure Act, § 202" is improper. To the extent that this language requires DEC to file all future guidelines, it erroneously divests DEC of its administrative authority to establish, under some circumstances, guidelines applicable on a case-by-case basis, as opposed to regulations *(see, Matter of Roman Catholic Diocese v New York State Dept. of Health,* 109 AD2d 140, 148 [concurring/dissenting opn], *revd on concurring/dissenting opn below* 66 NY2d 948).

■ We turn next to Supreme Court's determination that petitioner was removed from the list without adequate due

---

* [3] Although this provision was not cited by respondents before Supreme Court, it is a legal argument and, thus, may properly be considered for the first time on appeal *(see, Sega v State of New York,* 60 NY2d 183, 190, n 2; *Telaro v Telaro,* 25 NY2d 433, 438-439).

process. The appeal from this ruling was technically rendered moot by DEC's discontinuation of the list. Nonetheless, insofar as it may be interpreted to hold that petitioner is entitled to greater procedural safeguards than respondents afforded it in refusing to deal with petitioner, review of that ruling is appropriate (see, Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715, supra). Assuming, arguendo, that petitioner did have a constitutionally protected liberty interest in remaining on the list, we conclude that the review process conducted here, whereby petitioner was given adequate notice of the deficiencies charged, an opportunity to respond and review by O'Toole and then the Commissioner, was all the process that was due petitioner under the circumstances (see, Matter of Bezar v New York State Dept. of Social Servs., 151 AD2d 44, 51). Petitioner's reply to O'Toole's letter was largely conclusory and did not warrant the holding of a hearing (see, supra).

Finally, that portion of Supreme Court's judgment enjoining respondents from refusing or continuing to refuse to pay for contract or subcontract work performed by petitioner must be reversed. An award of money damages is not incidental to the primary relief sought in this CPLR article 78 proceeding and is more properly sought in a breach of contract action in the Court of Claims (see, CPLR 7806; Matter of Gross v Perales, 72 NY2d 231, 235).

MAHONEY, P. J., WEISS, YESAWICH, JR., and HARVEY, JJ., concur.

Ordered that the appeal from so much of the judgment as (1) determined that respondents were without authority to prepare, issue, maintain or implement a list of technically acceptable laboratories or guidelines relating thereto, (2) determined that petitioner's removal from the list of technically acceptable laboratories by respondents was arbitrary and capricious, and (3) enjoined respondents from enforcing the determination removing petitioner from the list of technically acceptable laboratories and from further creating or implementing such a list, is dismissed as moot, without costs.

Ordered that the judgment is otherwise reversed, on the law, without costs, and petition dismissed.