[607 NYS2d 446]

In the Matter of AUTOMATED WAGERING INTERNATIONAL, INC.,
Appellant, v NEW YORK STATE DEPARTMENT OF TAXATION
AND FINANCE et al., Respondents.

Third Department, January 27, 1994

APPEARANCES OF COUNSEL

*Roemer & Featherstonhaugh, P. C.,* Albany *James D. Featherstonhaugh* of counsel), and *Oppenheimer, Wolff & Donnelly,* New York City, for appellant.

*G. Oliver Koppell, Attorney-General,* Albany *(Frank K. Walsh* and *Peter G. Crary* of counsel), for New York State Department of Taxation and Finance and others, respondents.

*DeGraff, Foy, Holt-Harris & Mealey,* Albany *(Carroll J. Mealey* and *Peter G. Barber* of counsel), *Williams & Connolly,* Washington, D.C. *(David Povich, Peter J. Kahn, William R. Murray, Jr.,* and *R. Hackney Wiegmann* of counsel), and *Cynthia Nebergall,* West Greenwich, Rhode Island, for GTECH Corporation, respondent.

## OPINION OF THE COURT

Yesawich Jr., J.

On May 15, 1991, respondent Division of the Lottery (hereinafter the Lottery) issued a request for proposals (hereinafter RFP) inviting vendors to submit bids for a five-year contract to provide an on-line lottery system. Two companies, respondent GTECH Corporation and Control Data Corporation (hereinafter CDC), submitted bids which were to be evaluated, according to the RFP, in two stages. First, the proposals were reviewed for technical merit. After each was given a technical score, based on a scoring system in which points were awarded for various categories of technical merit, the price portions of the proposals would then be opened and, if the lowest priced proposal was not also the highest in technical merit, a "price-value" analysis would be performed in which the Lottery's Evaluation Committee (hereinafter the Committee) would de-

termine whether the added value provided by a technically superior proposal was worth the additional cost.

CDC's proposal had been given a technical score of 91.75 points and GTECH's proposal, which the Committee calculated, based on estimates of total annual lottery revenues, would cost approximately $1.4 million less per year, received 88.05 points. After engaging in a price-value analysis, the Committee found that the CDC system had the capability of generating enough additional sales to more than compensate for the difference in price and, finding no additional technical or price factors warranting consideration, recommended that CDC's proposal be accepted.

While respondent Director of the Lottery was awaiting the results of a police background investigation of each company, CDC informed him that it was planning to sell its Automated Wagering Division (hereinafter AWD), the division that would have been responsible for fulfilling the Lottery contract, to Video Lottery Technologies, Inc. (hereinafter VLT). At about the same time, and also unanticipated by the Lottery, GTECH, formerly a privately held corporation, announced that it was planning a public stock offering. Because of these proposed corporate changes in the two bidders, the Director instructed the Committee to reevaluate both companies' proposals.

After reviewing, among other things, a stock registration statement filed by VLT in connection with its acquisition of AWD (hereinafter Form S-1), the Committee found AWD to be significantly less sound, financially, than it had believed. Taking this into consideration, along with the other strengths and weaknesses of VLT, the Committee revised the score for the CDC proposal, which would be assigned to petitioner—a wholly owned subsidiary of VLT formed from AWD—by adjusting the score for "corporate capability", a category included in the technical merit scoring system, downward, from 9.0 to 7.4, and by decreasing the "games and marketing" score from 8.5 to 8.4. GTECH's stock offering having been successfully completed, the Committee considered that company's financial outlook more favorable, and accordingly raised its "corporate capability" score from 8.8 to 9.5. These changes still left the technical merit score for CDC's proposal (90.05) higher than that of GTECH's proposal (88.75), but by a narrower margin than before the reevaluation.

CDC's higher-priced proposal still being the one with a

superior technical score, the price-value analysis of the evaluation process was employed by the Committee. In view of the changes in "corporate capability", essentially the risk that petitioner would not be able to become profitable and would be unable to complete the contract, the Committee no longer found the benefits of CDC's proposal worth the added cost. As a consequence, it recommended that the contract be awarded to GTECH; the Director agreed, and on December 4, 1992 notified the bidders of his decision.

Petitioner brought this proceeding, seeking to annul the Lottery's determination on the ground that it was arbitrary and capricious, particularly in view of the Committee's previous recommendation to award the contract to CDC. Supreme Court dismissed the petition and petitioner appeals.

■ Initially, we find no merit to respondents' suggestion that petitioner does not have standing to bring this proceeding. Although petitioner was not an original bidder for the contract, all parties concede that had the contract been awarded to CDC, it would have been assigned to VLT or petitioner for performance by petitioner; that fact prompted the Committee to reevaluate the bids and ultimately to award the contract to GTECH. Having lost the opportunity to perform and profit from the contract, petitioner was clearly injured by the determination and was also within the zone of interest intended to be protected by the prohibition against arbitrary agency action in this context (see, Matter of Mobil Oil Corp. v Syracuse Indus. Dev. Agency, 76 NY2d 428, 433).

■ Turning to the merits, we find a rational basis for the Lottery's award of the contract to GTECH (see, Matter of NANCO Envtl. Servs. v Jorling, 172 AD2d 1, 6, lv denied 80 NY2d 754). Petitioner's primary argument is that the Committee, after completing the technical scoring and price-value analysis as specified in the RFP, went one step further and engaged in a "risk/gain" analysis, as a result of which it determined—ostensibly on the basis of speculation and contrary to its findings in the technical evaluation—that it would not be prudent to award petitioner the contract. Petitioner asserts that having found its "corporate capability" to be adequate, as reflected by a score of 7.4 (the minimum acceptable score being 6.0), the Committee was foreclosed from giving further consideration to the financial risks confronting petitioner, and that by engaging in what petitioner refers to as a "risk/gain" analysis the Committee evaluated the proposals according to criteria not disclosed in the bid specifications

*(see, e.g., Matter of Progressive Dietary Consultants v Wyoming County,* 90 AD2d 214, 217-218). This argument lacks merit.

The purpose of the price-value analysis was to determine whether the added technical benefit of the higher priced system—which was not as substantial in the later analysis as in the earlier, due to VLT's lower score for corporate capability—was worth the higher price. Such an evaluation must necessarily contemplate both the technical merit of the proposal as a whole, including the financial risks included in the corporate capability rating, and the price. The key determination to be made, according to the RFP, is whether "the additional benefits justify any additional costs". What petitioner adverts to as a "risk/gain" analysis represents nothing more than that aspect of the committee's price-value analysis in which the negative factors, such as financial risk, are assessed and balanced, along with the other technical features, against the higher price. The Committee's finding that the benefits of the CDC proposal were not substantial enough, particularly in view of the anticipated capital needs of the combination of VLT with petitioner, to warrant the additional cost, is amply borne out by the record, particularly, as noted by Supreme Court, by the disclosures made on VLT's Form S-1.

In sum, we find the Committee's procedures to have been in keeping with the methodology set forth in the RFP and its findings fully supported in the record. Petitioner's other arguments have been considered, and found unpersuasive.

MIKOLL, J. P., CREW III, WHITE and CASEY, JJ., concur.

Ordered that the judgment is affirmed, without costs.